IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CAIRA FREDERICKS                                                      PLAINTIFF

          v.                              CIVIL NO. 14-5244

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Caira Fredericks, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI on July 25, 2011, alleging disability since September 7, 2007, due to anxiety, hypothyroidism, insomnia, narcolepsy, and pelvic pain. (Tr. 10, 189). For DIB purposes, Plaintiff retained insured status through September 7, 2007. (Tr. 12). An administrative hearing was held on October 4, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 26-56).

By a written decision dated February 1, 2013, the ALJ determined Plaintiff's pelvic adhesive disease, chronic pain, narcolepsy, cognitive loss, intermittent edema, human parvo B19,

-1-

and anxiety were severe impairments. (Tr. 12). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13-14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations:

> She is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and no climbing of ladders, ropes, or scaffolds. She is able to operate foot controls bilaterally reach bilaterally frequently and reach overhead bilaterally occasionally. The claimant must avoid unprotected heights and frequent exposure to hazardous machinery and should only occasionally operate a motor vehicle. The claimant is able to perform work where interpersonal contact is incidental to work performed, complexity of tasks is learned and performed by rote, with few variables, requiring little judgment, and supervision required is simple, direct, and concrete.

(Tr. 14).

With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform her past relevant work (PRW) as a cashier II. (Tr. 20). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 20).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on May 29, 2014. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). The parties consented to the jurisdiction of this Court on August 6, 2014. (Doc. 7).  Both parties have filed appeal briefs, and the case is ready for decision.  (Docs. 12, 13).

## II. Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an

impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

## III. Discussion

On appeal, Plaintiff argues the ALJ: (1) failed to properly consider her impairments; (2) erred in analyzing her credibility; (3) did not base the RFC determination on substantial evidence; and (4) should not have found she could perform her past relevant work. (Doc. 12, pp. 11-18).

### A. Severe Impairments

Plaintiff believes the ALJ erred by not finding her severe impairments included obesity, and by failing consider her impairments in combination. (Doc. 12, pp. 13-14).

Plaintiff did not allege obesity as a severe impairment during the disability determination process, and did not present any medical evidence at the hearing to show obesity caused her limitations. An ALJ is not required to consider or investigate a claim "not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)).

As for whether the ALJ considered all of Plaintiff's impairments in combination, this Court has repeatedly addressed the Eighth Circuit's position on the issue. An ALJ's synopsis of the record and discussion of impairments indicates that all of a claimant's impairments were considered in combination. See e.g., Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011). Here,

the ALJ stated that in determining Plaintiff's RFC, he considered "all of the claimant's impairments, including impairments that are not severe." (Tr. 11-12). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 13). Such language demonstrates the ALJ considered the combined effect of Plaintiff's impairments. Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

**B. Credibility**

Plaintiff contends the record "both supports and links all of [her] subjective allegations," and the ALJ's "erroneous findings, and his repeated attempts to impeach [Plaintiff's] credibility decisively defeats his conclusions."[1] (Doc. 12, pp. 14-18).

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.

The ALJ addressed the Polaski factors in the written decision, and found Plaintiff's subjective complaints only partially credible because Plaintiff's pain management physician noted she had a good analgesic response to her pain medications that "allowed her to maintain her

---

[1] Plaintiff also argues the ALJ improperly used a "sit and squirm" test to draw his conclusions, but the record and written decision have neither a direct nor implicit reference to a sit and squirm test. (Doc. 12, p. 15).

functioning without any severe side effects." (Tr. 15-16). The ALJ also noted a sleep study indicated Plaintiff's daytime sleepiness and slightly reduced night time sleep efficiency was caused by her use of opioid medications, and the opinion of Dr. Anne Stevens, a treating psychologist, who attributed Plaintiff's reduced cognitive abilities to long-term overuse of opioids. (Tr. 16). Additionally, the ALJ highlighted that Plaintiff stopped taking antidepressant and antianxiety medications, and did not follow Dr. Stevens' recommendation to enter an inpatient treatment program to reduce her opioid use. (Tr. 16, 17-18). These were valid reasons for the ALJ to partially discount Plaintiff's subjective complaints. See e.g., Cox v. Barnhart, 471 F.3d 902 (8th Cir. 2006).

Accordingly, the undersigned finds the ALJ's credibility analysis is based on substantial evidence.

### C. RFC Assessment

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393. F.3d 798, 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). Even though the RFC assessment draws from medical sources, it is ultimately an administrative determination. 20 C.F.R. §§ 416.927(e)(2), 416.946; Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007). In evaluating a claimant's

-6-

RFC, an ALJ is not limited to considering medical evidence exclusively, but should "consider at least some supporting evidence from a professional." Lauer, 245 F.3d at 704.

At the hearing, Plaintiff presented evidence of multiple surgeries for pelvic adhesive disease and treatment for bacterial meningitis in the past as well as more recent medical evidence that addressed her chronic pain, narcolepsy, obsessive compulsive disorder, and anxiety.

Although Plaintiff's treatment notes support the ALJ's RFC assessment, two medical opinions in the record are not consistent with the ALJ's conclusions. Dr. Gene Chambers, a consulting psychologist, examined Plaintiff and opined her obsessive compulsive disorder and narcolepsy severely impacted her ability to complete work-like tasks within an acceptable time frame. (Tr. 349). Dr. Louis Sasser, Plaintiff's pain management specialist, also opined Plaintiff's narcolepsy, deconditioning, and chronic pain prevented full-time employment. (Tr. 360).

The ALJ addressed Dr. Chambers' examination in detail and gave his opinions "some weight," but discounted Dr. Chambers' conclusions after noting Plaintiff was not taking any psychotropic medication, and had never received mental health treatment. (Tr. 17-18). While discussing Dr. Chambers' exam, the ALJ also referenced Dr. Stevens' report, which stated Plaintiff's mental symptoms were exacerbated by chronic opioid dependence, as a factor in discounting Dr. Chambers' opinions. (Tr. 18). As a consulting physician, Dr. Chambers' opinions were not entitled to any special weight. Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007). The ALJ appropriately identified Dr. Stevens' examination, Plaintiff's lack of mental health treatment, and the absence of psychotropic medications as factors that did not support fully adopting Dr. Chambers' recommendations.

Dr. Sasser's Medical Source Statement and treatment notes deserve closer attention due to his status as a treating physician. Dr. Sasser's records show treatment between 2007 and October of 2011. (Tr. 256-289, 332-334). Plaintiff's prescriptions included morphine and methadone, which, according to Dr. Sasser, controlled her pain. (Tr. 262, 253, 284-285, 288, 332). In June of 2007, Dr. Sasser noted Plaintiff's "pain is being well tolerated with her current regimen of medications." (Tr. 288-289). In October of that year, Plaintiff consulted with Dr. Sasser about traveling to Africa, who gave medical permission for her trip as long as she stayed hydrated to cope with the hot weather, although she testified she decided not to travel. (Tr. 37-38, 287).

Plaintiff was referred for a sleep study in March of 2008, which showed "minimally decreased sleep efficiency and decreased REM sleep, probably due to the medications." (Tr. 224-225). No abnormalities were observed that explained Plaintiff's daytime sleep problems. (Tr. 225).

In May of 2008, Dr. Sasser noted "she continues to get analgesic effects, which allow her to maintain her activity levels without any severe side effects and is not showing any drug seeking or aberrant drug behavior." (Tr. 284). Following the visit, Dr. Sasser's treatment notes continued to indicate Plaintiff's pain was controlled with medications.

At a visit in December of 2010, Plaintiff reported her pain was a 1 to 2/10 and that she had stopped taking Effexor. (Tr. 262-264). Dr. Sasser encouraged her to wean off of Xanax. (Tr. 263). In March and June of 2011, Plaintiff reported her pain was a 3/10. (Tr. 257, 260). In October of 2011, Plaintiff reported 3/10 pain, and Dr. Sasser noted Plaintiff was "ok on current analgesics," her abdomen exam was normal, and she had reduced her daily use of Adderall. (Tr. 332-334).

Dr. Sasser completed a Medical Source Statement in November of 2011 and opined, in addition to her narcolepsy and muscle weakness, "her chronic abdominal pain is the worst limiting

factor in her ability to perform . . . work related activities . . . she has adjusted to her chronic pain medicines[,] but the chronic pain has resulted in marked deconditioning[,] which would prevent her from full time employment." (Tr. 345, 349). Dr. Sasser anticipated Plaintiff could occasionally lift and carry up to ten pounds; stand or walk one hour each in an eight hour workday; occasionally reach overhead; occasionally perform most postural activities, but never climb ladders or scaffolds; and should never be exposed to unprotected heights, and only occasionally operate a motor vehicle. (Tr. 345-349)

Although the ALJ gave Dr. Sasser's opinions "some weight as the claimant's pain doctor," the ALJ discounted some of Dr. Sasser's conclusions since his medical notes reported Plaintiff's pain was controlled by medications, exams of her abdomen were normal, and Plaintiff's "deconditioning," in Dr. Stevens' opinion, resulted from overusing pain medications. (Tr. 17).

An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). For instance, a physician's opinion should not receive controlling weight if it is not supported by medically acceptable diagnostic techniques, is inconsistent with other substantial evidence of record, or it is unsupported by the physician's own treatment notes. See Halverson v. Astrue, 600 F .3d 922, 929–30 (8th Cir. 2010). If the ALJ finds a treating physician's opinion was not entitled to controlling weight, the ALJ assigns a weight based on the treatment relationship, supportability and consistency of the opinion and treatment notes, physician's specialization, and any other factors the Plaintiff brings to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(1-6), 416.927(c)(1-6).

Here, the ALJ's terse discussion of the statutory factors is sufficient since Dr. Sasser's opinions about Plaintiff's exertional limitations were not supported by his treatment notes, and his opinions were still given some weight. Although the ALJ discounted Dr. Sasser's conclusions regarding Plaintiff's exertional abilities, he adopted Dr. Sasser's accommodations for Plaintiff's narcolepsy and postural limitations in the RFC assessment.

Along with affording Dr. Sasser and Dr. Chamber's opinions some weight, the ALJ's conclusions were supported by the opinions of the consulting physicians, who determined Plaintiff could perform unskilled work above the light level, and were consistent with Dr. Steven's examination and Plaintiff's treatment notes. (Tr. 319, 325-331, 335, 363).

The Court "will disturb the ALJ's decision only if it falls outside the available zone of choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006). Even when evidence exists to support a different conclusion, the ALJ's findings should be affirmed as long as they are based on substantial evidence. Haley, 258 F.3d at 747. Based upon the medical opinions as a whole and Plaintiff's reports and treatment records, the ALJ's conclusions are well supported.

Accordingly, the undersigned finds the ALJ's RFC determination is based on substantial evidence.

**D.  Step Four**

The burden is on the claimant to demonstrate that she is unable to return to her past relevant work. Eichelberger, 390 F.3d at 591. While VE testimony at step four is not necessary to determine if a claimant can perform her past work, the ALJ may consider VE testimony. Wagner v. Astrue, 499 F.3d 842, 853 (8th Cir. 2007). A VE's response to a properly posed hypothetical question at

step four provides substantial evidence to support the ALJ's finding that an individual can perform her past work. Depover v. Barnhart, 349 F.3d 563, 568 (8th Cir. 2003).

The ALJ asked the VE about the exertional demands and skill requirements of Plaintiff's past relevant work as a cashier at a thrift shop. (Tr. 51-52). In response, the VE testified Plaintiff's work was as a cashier II at the light, unskilled level. (Tr. 52). The ALJ then posed a hypothetical question to the VE that was consistent with the RFC assessment. (Tr. 52-53). In response, the VE testified the hypothetical person could perform Plaintiff's past work as a cashier II. (Tr. 53). **Such testimony, based on a hypothetical question consistent with the record, constitutes substantial evidence.** See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

Based on the foregoing, the undersigned finds the ALJ's determination that Plaintiff is able to perform her past relevant work is supported by substantial evidence

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. Plaintiff's Complaint is dismissed with prejudice.

Dated this 10th day of September, 2015.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-11-